UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JO DEVON MAXWELL, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Case No. 1:13CV00124 SNLJ |

**MEMORANDUM AND ORDER**

This case is a motion under 28 U.S. C. § 2255 to vacate, set aside or correct sentence by Jo Devon Maxwell, a person in federal custody. On June 27, 2012, Maxwell plead guilty before this Court to the offense of conspiracy to distribute 280 grams or more of cocaine base and, on September 24, 2012, this Court sentenced Maxwell to the Bureau of Prisons for a term of 120 months, a sentence within the sentencing guideline range. Maxwell's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

I.  **Procedural History**

Beginning in approximately January 2009, but including June 16, 2010, and continuing until May 3, 2011, Petitioner Jo Devon Maxwell, along with Randy Earl Caruthers, David A. Parker, Lamar Anthony White, Michael Dewayne Caruthers, Hinton Gilmer, Jr, Clarence Pulliam, Sidney Denham, and David Lee Harley engaged in a conspiracy to distribute multiple kilograms of cocaine and cocaine base throughout southeast Missouri and northeast Arkansas. On behalf of David Parker, Maxwell delivered both cocaine and cocaine base to Gilmer, Harley, and others. Maxwell also obtained the money for the drugs. Maxwell was responsible for 160

grams of cocaine and 300 grams of cocaine base. (Plea Agmt.¶4; Plea Tr. 12-13; Presentence Report hereinafter "PSR" ¶¶ 21, 24, 27)

A Grand Jury sitting in the Southeastern Division of the Eastern District of Missouri returned an Indictment against Maxwell and the co-conspirators identified above in a three count Indictment. Maxwell was charged, in Count I only, with conspiracy to distribute cocaine base. On June 27, 2012, Maxwell waived her right to a trial by jury and pled guilty as charged.

The Government and Maxwell jointly recommended that the appropriate base offense level was 32 as found in § 2D1.1(4) of the United States Sentencing Guidelines for more than 280 grams of cocaine base and less than 840 grams. (Plea Agmt. ¶ 6.a.(1); PSR ¶ 26). The parties also agreed that three levels should be deducted pursuant to § 3E1.1(a) and (b), because the defendant had clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. (Plea Agmt.¶ 6.b.(1); PSR ¶¶ 41, 42) Both parties further agreed that **if** the "safety valve" applied, an additional two levels would be subtracted. (Plea Agmt.¶ 6.a.(2)) Depending on whether the "safety valve" applied, the parties believed the total offense level would be either 29, or 27. (Plea Agmt. ¶ 6.c.)

Neither party took a position as to criminal history, but rather left the defendant=s Criminal History Category up to this Court. (Plea Agmt. ¶ 6.d.)

Furthermore, the parties estimated that:

> . . .the Total Offense Level is 29, or 27, depending on whether she qualifies for the two level reduction [for the safety valve]. However, unless the defendant qualifies for relief from the applicable statutory mandatory minimum sentence pursuant to 18 U.S.C. § 3553(f), the defendant is subject to the ten year mandatory minimum sentence pursuant to 18 U.S.C. § 3553(f), which may result in a sentence higher than otherwise applicable guideline range based on drug quantity and criminal history. Depending on the underlying offense and defendant's criminal history,

> defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds, the defendant is a Career Offender, the parties estimate that her Base Offense Level will be 37, her total offense level will be 34, and her Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

(Plea Agmt. ¶ 6.c.)

During the change of plea hearing, Maxwell answered as follows in regard to this Court's inquiry concerning her satisfaction with counsel:

> THE COURT: So knowing that let me ask you are you satisfied with the way your lawyer has handled your case?
>
> MAXWELL: Yes, sir.
>
> THE COURT: Has she investigated the case to your satisfaction?
>
> MAXWELL: Yes, sir.
>
> THE COURT: Has she done everything you've asked her to do then?
>
> MAXWELL: Yes, sir.
>
> THE COURT: No gripes or complaints whatsoever?
>
> MAXWELL: No, sir.
>
> THE COURT: By pleading guilty you're giving up your right to trial by jury. Are you sure that's what you want to do?
>
> MAXWELL: Yes, sir.

(Plea Tr. 4-5)

Additionally, Maxwell affirmed she understood all of the rights to a trial that she was waiving by virtue of her guilty plea and she swore that she was not coerced into accepting the plea:

| | |
|---|---|
| THE COURT: | Knowing all that let me ask you again are you sure you want to give up your right to trial by jury by pleading guilty? |
| MAXWELL: | Yes, sir. |
| THE COURT: | Has anyone forced you, coerced you or threatened you in any manner to get you to plead guilty? |
| MAXWELL: | No, sir. |

(Plea Tr. 6)

Maxwell also attested that her guilty plea was not coerced in the plea agreement itself:

> This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(Plea Agmt.¶ 10)

In regard to whether Maxwell understood the plea agreement and had adequate time to review it, this Court inquired as follows:

| | |
|---|---|
| THE COURT: | Now, the lawyers have given me a written guilty plea agreement consisting of 12 pages. I see that you and the two lawyers have signed it on page 12; is that right? |
| MAXWELL: | Yes, sir. |
| THE COURT: | Have you read the agreement? |
| MAXWELL: | Yes, sir. |
| THE COURT: | Have you gone over it in detail with your lawyer? |
| MAXWELL: | Yes, sir. |

- 4 -

| | |
|---|---|
| THE COURT: | And has she explained the contents of the agreement in detail to you? |
| MAXWELL: | Yes, sir. |
| THE COURT: | And do you understand the contents of the agreement? |
| MAXWELL: | Yes, sir. |
| THE COURT: | Is there anything in here that you do not understand? |
| MAXWELL: | No, sir. |

(Plea Tr. 6-7)

When this Court inquired about the Guidelines recommendations of the parties, the applicable statutory penalties, and the fact the ultimate sentence was at the discretion of this Court, the following exchange took place:

| | |
|---|---|
| THE COURT: | I see at the bottom of page 5, at the top of page 6 that the lawyers estimate the total offense level is either 29 or 27. That depends on whether you qualify for what we call the safety valve provision. It indicates here that you're otherwise going to be subject to a ten-year mandatory minimum sentence: Is that your understanding too? |
| MAXWELL: | Yes, sir. |
| THE COURT: | Also, depending on your criminal history you could be classified as a career offender. If that happens, the total offense level could be 37 - - or it would be 34 - - I'm sorry. The criminal history might be as high as a category []6: Do you understand that too? |
| MAXWELL: | Yes, sir. |
| THE COURT: | You'd be considered as a career offender if your criminal history is that bad, in other words: Do you understand that? |
| MAXWELL: | Yes, sir. |
| THE COURT: | Your lawyer has explained all that to you then? |

MAXWELL: Yes, sir.

THE COURT: You've gone over all the sentencing guidelines?

MAXWELL: Yes, sir.

THE COURT: Well, in any event, after the plea I'll get with the probation officer, and we will recalculate the total offense level, and it may be 29 or 27. You may or may not qualify for that two-level reduction under what we call the safety valve, and it may be that your criminal history is bad enough that you'd be considered a career offender so that the total offense level would be up to 34 or a criminal history category as high as a Category 6. I just wanted to go over all that with you again to make sure you understand all that.

MAXWELL: Yes, sir.

THE COURT: Any questions about that then?

MAXWELL: No, sir.

THE COURT: Now, we'll use the total offense level and your criminal history to calculate the sentencing guidelines: Do you understand that's how it works?

MAXWELL: Yes, sir.

THE COURT: But the guidelines are just guidelines. And by that I mean I can impose a sentence above the guidelines or a sentence below the guidelines: Do you understand that too?

MAXWELL: Yes, sir.

THE COURT: Now, I am bound by the statutory penalty that's at the top of page 5. For this offense it's up to life imprisonment, a fine up to 10 million dollars or a combination of imprisonment and fine. Imprisonment would be followed by a period of supervised release of at least five years and, perhaps, all the way up to life.

Then, as we mentioned before, the crime to which you are pleading guilty requires a mandatory minimum term of imprisonment of at least ten years: Do you understand that too?

| | | |
|---|---|---|
| MAXWELL: | | Yes, sir. Yes, sir. |
| THE COURT: | | So the range of punishment is really ten years to life? |
| MAXWELL: | | Yes, sir. |
| THE COURT: | | And the sentence is going to be in my discretion too: Do you understand that? |
| MAXWELL: | | Yes, sir. |
| THE COURT: | | So knowing that has anyone told you or promised you what sentence you'd receive in the case? |
| MAXWELL: | | No, sir. |

(Plea Tr. 8-11)

This Court confirmed that Maxwell understood she was waiving her right to appeal all non-sentencing issues and Maxwell agreed. (Plea Tr. 7-8) This Court then stated:

> . . .that next paragraph says that if I accept this plea and adopt the sentencing guidelines offense level that the lawyers agreed to, then if I impose a sentence that's within the sentencing guidelines range, then you waive or give up your right to appeal even the sentence itself: Is that your understanding?

Defendant Maxwell answered, "Yes, sir." (Plea Tr. 8)

The Presentence Report (PSR) provided the base offense level was 32 (PSR & 34) and three levels were deducted for acceptance of responsibility. (PSR ¶¶ 41 and 42) The total offense level set forth in the PSR was 29. (PSR ¶ 43) The "safety valve" did not apply, because Maxwell had three criminal history points. (PSR ¶ 50; *see also*, USSG § 5C1.2(a)(1))

Maxwell's criminal history score was three, resulting in a criminal history category of II (PSR ¶50), based on a single 2009 conviction for "No Valid Operator's License" from Cape Girardeau Municipal Court (PSR ¶ 47) and the fact that Maxwell was on probation at the time of

the instant offense (PSR ¶ 49).

With a total offense level of 29 and a criminal history category of II, the advisory sentencing guidelines range would typically be 97 to 121 months, however, since "the statutorily authorized minimum sentence of 10 years is greater than the minimum of the guideline range, the guideline range is 120 to -121 months." (PSR ¶ 82)

Maxwell did not file any objections to the PSR. (Doc. 437)

On September 24, 2012, this Court adopted the findings contained in the PSR and in accord with the joint recommendation of the parties, sentenced Maxwell to a term of 120 months imprisonment. (Doc. 462 and 463)

Maxwell did not file any appeal concerning her sentence or conviction.

Maxwell has filed a Motion under 28 U.S.C. § 2255 based on various allegations, including ineffective assistance of counsel. Maxwell made very few, if any, specific factual allegations in her petition. The points raised revolve primarily around her belief that the "safety valve" should have applied in her case. She also claims that she was discriminated against based on her race, however, she did not assert any facts to support the claim. Furthermore, she had not made a specific claim for relief.

## II. Applicable Law

### A.  Need for an Evidentiary Hearing and Burden of Proof

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Court

states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under § 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A § 2255 motion may be dismissed without hearing if (1) the movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. *Winters v. U.S.*, 716 F.3d 1098, 1103 (8th Cir. 2013) (quoting *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir.2001)).

The remedy provided by § 2255 does not encompass all claimed errors in conviction and sentencing. *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)). A federal prisoner may file a § 2255 motion if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Meirovitz v. U.S.*, 688 F.3d 369, 370-71 (8th Cir. 2012)

cert. denied, 133 S. Ct. 1248 (U.S. 2013).

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *See*, *United States v. Oldham*, 787 F.2d 454, 457 (8th Cir.1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, entitle the movant to relief. *See*, *Payne v. United States*, 78 F.3d 343, 347 (8th Cir.1996). When all the information necessary for the court to make a decision with regard to claims raised in a § 2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992).

B.     **Burden of Proof – Ineffective Assistance of Counsel**

In order to prevail on a theory of ineffective assistance of counsel, the Movant must demonstrate two separate things; that counsel's representation fell below an objective standard of reasonableness (was constitutionally deficient) , and secondly that counsel's deficient performance materially and adversely prejudiced the outcome of the case. *Furnish v. United States*, 252 F.3d 950, 951 (8th Cir. 2001). While counsel has a duty to make reasonable investigations and decisions, "in determining whether counsel's performance was deficient, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (citing *Strickland*, 466 U.S. at 689).

In order to prove that counsel's error was prejudicial, Movant must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability has been described as "a probability sufficient to undermine confidence in the outcome." *Id*. However, the reviewing court need not address the issue of counsel's performance if it determines that the movant "suffered no prejudice from the alleged ineffectiveness." *Pryor v. Norris*, 103 F.3d 710, 712 (8th Cir. 1997).

### C.    Sentencing Guidelines Issues

Ordinarily challenges regarding Sentencing Guideline issues are not cognizable upon a § 2255 motion. *See*, *Kitterman v. United States*, 904 F.Supp. 987, 992 (8th Cir. 1993), citing *Auman v. United States*, 67 F.3d 157, 160-61 (8th Cir. 1995). "Section 2255 claims may provide relief for cases in which the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255; *see*, *United States v. Wilson*, 997 F.2d 429 (8th Cir. 1993). This provision, however, has been held to apply "to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing Guideline application issues." *Auman*, 67 F.3d at 161. Sentencing Guideline arguments do not fall under the § 2255 provision for sentences in "excess of the maximum authorized by law and should therefore be brought only on direct appeal." *Wilson*, 997 F.2d at 431. As such, a movant cannot raise issues regarding Sentencing Guideline errors not raised upon direct appeal, unless the movant can show both cause for failure to raise the issue on direct appeal and actual prejudice resulting from the failure. *Wilson*, 997 F.2d at 431, citing *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).

### III. Discussion

### A.    Maxwell was sentenced to 10 years imprisonment, which was the lowest

**sentence available for the crime to which she pled guilty**.

In her § 2255 Motion, Maxwell alleges that she was "oversentenced for the crime ple[]d guilty to." (Maxwell's Motion at p. 4)

Quite simply, there is nothing in the record to support this bald assertion. Maxwell pled guilty to participating in a conspiracy to distribute more than 280 grams of cocaine base. The applicable statutory penalties provide that the lowest sentence available is ten years imprisonment and the highest sentence available is life imprisonment. Maxwell acknowledged that she understood the penalties and that this Court had the power to impose a sentence as great as life imprisonment. (Plea Tr. 10-11) Maxwell received the lowest sentence allowed by law, 120-months.

Maxwell's first ground for relief shall be dismissed, because her allegations are untrue and contradicted by the record; there is no need for an evidentiary hearing. *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013).

> **B.     Maxwell knew the full penalty range available to the District Court and no one told her what her sentence would be, nor did anyone promise her that she would receive a particular sentence.**

In Ground Two, Maxwell claims that her attorney "advised [her] the maximum sentence would be 66 months." (Maxwell's Motion at p. 5) Maxwell does not provide support for this allegation, nor does she describe what her attorney stated, when the statement was made, where the statement was made, or how her attorney allegedly made this statement.

Most importantly, the record of the case demonstrates that Maxwell's claim is untrue. During the change of plea hearing, Maxwell affirmed that she knew if she did not qualify for the "safety valve," the terms of imprisonment that were available included from ten years all the way

up to life. (Plea Tr. at pp. 8-9) She also stated that no one had specifically told her or promised her what sentence she would receive. (Plea Tr. 11) As noted above, the following exchange took place during the change of plea hearing:

> THE COURT: So the range of punishment is really ten years to life?
>
> MAXWELL: Yes, sir.
>
> THE COURT: And the sentence is going to be in my discretion too: Do you understand that?
>
> MAXWELL: Yes, sir.
>
> THE COURT: So knowing that has anyone told you or promised you what sentence you'd receive in the case?
>
> MAXWELL: No, sir.

(Plea Tr. 11)

Not only did Maxwell affirm her understanding of the available penalties and the fact there was no guarantee as to what sentence she might receive, those realities were also contained in the plea agreement. (Plea Agmt. at ¶¶ 5, 6.c., 6.e.) Also during the plea hearing, Maxwell admitted she had not only reviewed the plea agreement in detail with her attorney, but also indicated that she understood the terms of the plea agreement. (Plea Tr. 6-7)

Even a defendant's reliance on his counsel's opinion as to the calculation of defendant's sentence would not make a defendant's plea involuntary, where the record reveals that the defendant was fully informed and knowingly and voluntarily pleaded guilty. *See Hollis v. United States*, 687 F.2d 257, 260 (8th Cir. 1982); *Roberson v. United States*, 901 F.2d 1475, 1478 (8th Cir.1990).

The record of the case demonstrates that Maxwell's allegation that her attorney told her

the maximum sentence she would receive was 66 months is untrue, there is no need for an evidentiary hearing. *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013). Maxwell's second ground for relief shall be dismissed.

> **C.** **Maxwell had three criminal history points and was therefore ineligible for the "safety valve."**

In Maxwell's third ground for relief, she asserts that her "guideline points [were] miscalculated. Safety valve should have applied." (Maxwell's Motion at p. 7) Nothing in the record supports this claim. To the contrary, the record reflects that Maxwell had a 2009 conviction for "No Valid Operator's License" and was on probation at the time of the drug conspiracy. Maxwell's criminal history resulted in her being found to have a Criminal History Category II, which made her ineligible for the safety valve. Maxwell did not object to this finding at the time of sentencing. (Doc. 437) Furthermore, Maxwell has not provided any evidence to support that her Criminal History Category was incorrect.

As previously stated, Sentencing Guideline arguments do not fall under the § 2255 provision for sentences in "excess of the maximum authorized by law and should therefore be brought only on direct appeal." *United States v. Wilson*, 997 F.2d at 431. As such, Maxwell cannot raise issues regarding Sentencing Guideline errors not raised upon direct appeal, unless she can show both cause for failure to raise the issue on direct appeal **and** actual prejudice resulting from the failure. *Wilson*, 997 F.2d at 431, citing *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992). Maxwell cannot make this showing as she failed to object to the fact she did not receive the "safety valve." Maxwell could not make an objection, because the truth is she had three criminal history points and therefore was ineligible for the reduction.

Maxwell's allegation that the "safety valve" should have been applied in her case "cannot be accepted as true because [it is] contradicted by the record" and is "inherently incredible" based on the record of the case. *Winters v. U.S.*, 716 F.3d 1098, 1103 (8th Cir. 2013). Maxwell's third ground for relief shall be dismissed without the necessity of an evidentiary hearing.

    **D.**    **There is no evidence of race discrimination in this case.**

In her fourth ground for relief, Maxwell complains that she "was discriminated against for race," but does not provide any specific facts to support her claim. (Maxwell's Motion at p. 8) Maxwell failed to supply any factual support for this allegation. There is nothing in the record of the case to support Maxwell's claim of racial discrimination.

As Maxwell failed to adequately state a claim for relief in her fourth point, this ground for relief shall also be denied.

    **E.**    **Maxwell knowingly and voluntarily waived her appellate rights.**

In the background section of Maxwell's Motion, she claimed that her attorney "did not advise [her] of [her] appeal rights." (Maxwell's Motion at p. 4) Although Maxwell did not include this point under the grounds for relief section, this Court addresses the claim in this section nonetheless

The record of this case supports that Maxwell knowingly and voluntarily waived her right to appeal. *United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999). At the time of her guilty plea, Maxwell knew she had a right to appeal and that she was giving up that right. (Plea Agmt. at ¶ 7 and Plea Tr. 7-8)

It is well-settled that a defendant can waive a procedural right, such as the right to appeal. *See*, *United States v. Andis*, 333 F.3d 886, 889-92 (8th Cir. (en banc) 2003) and *United States v.*

*Michelsen*, 141 F.3d 867, 871 (8th Cir. 1998). "Accordingly, a defendant who pleads guilty and expressly waived the statutory right to raise objections to a sentence may not then seek to appeal the very sentence which itself was part of the agreement." *United States v. Rutan*, 856 F.2d 827, 829 (8th Cir. 1992).

Provided the sentence was not in conflict with the negotiated agreement, which here it was not, defendant's knowing and voluntary waiver of appeal should be enforced. *United States v. Schulte*, 436 F.3d 849, 850-851 (8th Cir. 2006); *United States v. Vinson*, 414 F.3d 924, 930-31 (8th Cir. 2005); *United States v. Greger*, 98 F.3d 1080, 1081-82 (8th Cir. 1996). Further, an appeal waiver will be enforced "against all issues that fall within the scope of the waiver if the defendant entered the plea agreement and appeal waiver knowingly and voluntarily and enforcement of the waiver would not cause a miscarriage of justice." *U.S. v. Boroughf*, 649 F.3d 887, 890 (8th Cir. 2011). Here, Maxwell adduced no facts to overcome the presumption of verity attached to her in court sworn statements. There is no miscarriage of justice by enforcing the appellate waiver here, because Maxwell's 120-month sentence was legal and completely within the Sentencing Guidelines range of 120 months to 121 months.

This ground for relief shall be summarily dismissed without the need for an evidentiary hearing.

### IV. Conclusion

For the foregoing reasons, Maxwell's § 2255 motion is **DENIED**.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Maxwell has not made a substantial showing of the denial of a federal constitutional right.

**SO ORDERED** this 30th day of December, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE